Christine PURCHASE, individually and as next friend and mother of Clyce ("Chase") Purchase–Weatherly, a minor, Plaintiff,

v.

ADVANCED BIONICS, LLC d/b/a Advanced Bionics Corporation and Advanced Bionics Holding Corporation d/b/a Advanced Bionics Corporation and Astro Seal, Inc., Defendants.

No. 2:08–cv–02442–JPM.

United States District Court, W.D. Tennessee, Western Division.

Aug. 4, 2011.

Edwin E. Wallis, III, Tim Edwards, Glassman Edwards Wadé & Wyatt, PC, Memphis, TN, for Plaintiff.

Gregory G. Fletcher, Stacie S. Winkler, Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN, Kara Jean Rosenthal, Craig R. May, Jessica G. Scott, Michael L. O'Donnell, Wheeler Trigg O'Donnell, LLP, Denver, CO, for Defendants.

## NOTICE OF FINDINGS ON PREEMPTION

JON P. McCALLA, Chief Judge.

Defendant alleges that Plaintiffs' claims are preempted by federal law. This issue is governed by the Supreme Court cases of *Riegel v. Medtronic, Buckman v. Plaintiffs' Legal Committee,* and *Medtronic v. Lohr,*[1] and the Sixth Circuit cases of *Howard v. Sulzer Orthopedics, Kemp v. Medtronic,* and *Cupek v. Medtronic.*[2] Pursuant to this controlling precedent, the Court hereby makes the following findings on preemption.

### I.  SUMMARY

To the extent that Plaintiffs' claims are based on the following regulatory violations, they are impliedly preempted:

(1) Advanced Bionics' purported failure to submit a PMA Supplement Application and obtain PMA approval pursuant to 21 C.F.R. § 815.39 for the HiRes90K with an AstroSeal feedthru; and

(2) Advanced Bionics' purported failure to identify the change to the AstroSeal

---

**1.** *See Riegel v. Medtronic, Inc.,* 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008); *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001); *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

**2.** *See Howard v. Sulzer Orthopedics, Inc.,* 382 Fed.Appx. 436 (6th Cir.2010); *Cupek v. Medtronic, Inc.,* 405 F.3d 421 (6th Cir.2005); *Kemp v. Medtronic, Inc.,* 231 F.3d 216 (6th Cir.2000).

feedthru in its annual report pursuant to 21 C.F.R. § 814.84.

Claims premised on Plaintiffs' derivative assertion that the HiRes90K device with the AstroSeal feedthru was "adulterated" or "misbranded" pursuant to 21 U.S.C. § 351 are also preempted.

To the extent that Plaintiffs' claims are premised on violation of, or deviation from, the following requirements, the claims are not preempted:

(1) Advanced Bionics' alleged deviation from the manufacturing and design requirements set forth in PMA Supplement 30 for the HiRes90K by changing from the PA & E feedthru to the AstroSeal feedthru

(2) Advanced Bionics failure to test finished HiRes90K devices with AstroSeal feedthrus under actual or simulated use conditions in a violation of 21 C.F.R. § 820.30(g)

To the extent that Plaintiffs claims are premised on alleged violations of the other Current Good Manufacturing Practice ("CGMP") regulations cited by Plaintiffs, Plaintiffs have not stated actionable parallel claims. The CGMP regulations cited are too generic to provide a requirement that could support a parallel claim.

## II. ANALYSIS

### A. Federal Preemption

#### 1. Express Preemption

Under *Riegel, Kemp,* and *Howard,* claims premised on the following conduct may support a parallel claim, and thus survive express preemption under 21

U.S.C. § 360k(a): (1) a violation of FDA regulations; (2) a violation of, or deviation from, the FDA requirements established for a Class III device through the PMA process; and (3) a violation of, or deviation from, a specific and enforceable CGMP regulation.

#### 2. Implied Preemption

Under *Buckman, Kemp,* and *Cupek,* private rights of action to enforce FDA administrative and reporting requirements are prohibited by 21 U.S.C. § 337(a). Thus, even if a claim survives express preemption, it may be impliedly preempted if it amounts to a disguised fraud-on-the-FDA claim.

### B. Plaintiffs' Claims

#### 1. Failure to Submit PMA Supplement Application for HiRes90K Device with Astro Seal Feedthru

■ To the extent that Plaintiffs' claims are based on Advanced Bionics' purported failure to submit a PMA Supplement Application and obtain PMA approval pursuant to 21 C.F.R. § 814.39 for the HiRes90K with the AstroSeal feedthru, the claims are impliedly preempted. PMA approval is an administrative requirement, not a substantive safety requirement. Thus, claims premised on PMA approval are disguised fraud-on-the-FDA claims and, therefore, impliedly preempted.[3]

■ Likewise, claims premised on Plaintiffs' derivative assertion that the HiRes90K device with the AstroSeal feedthru was "adulterated" or "misbranded" pursuant to 21 U.S.C. § 351 are also preempted.[4]

---

3. *Cupek v. Medtronic, Inc.,* 405 F.3d 421, 424 (6th Cir.2005) (*citing Buckman,* 531 U.S. at 349, 121 S.Ct. 1012, and finding allegation that Medtronic was negligent per se for failing to comply with FDA's conditions of ap-

proval was "a disguised fraud on the FDA claim," and, therefore, impliedly preempted).

4. *In re Medtronic Sprint Fidelis Leads Litig.,* 592 F.Supp.2d 1147, 1162 & nn. 18 & 19 (D.Minn.2009), aff'd 623 F.3d 1200 (8th Cir.

### 2. Failure to File Notice in Annual Report

■ To the extent that Plaintiffs' claims are based on Advanced Bionics' purported failure to identify the change to the Astro-Seal feedthru in its annual report pursuant to 21 C.F.R. § 814.84, the claims are impliedly preempted. Annual reporting requirements are administrative requirements, not substantive safety requirements. Thus, claims premised on reporting requirements are disguised fraud-on-the-FDA claims and, therefore, impliedly preempted.[5]

### 3. Deviation from PMAS 30

■ To the extent that Plaintiffs' claims are premised on the allegation that Advanced Bionics' deviated from the manufacturing and design requirements set forth in PMA Supplement 30 for the HiRes90K by changing from the PA & E feedthru to the AstroSeal feedthru, the claims are not preempted.

In *Kemp*, the Sixth Circuit explained that:

Once [a device is] approved, ... the design, manufacturing processes, and labels may not be modified without further FDA approval, unless the modifications do not affect the device's safety or effectiveness. 21 C.F.R. § 814.39. Thus, ... it is the totality of the design, manufacturing processes, and labeling—when coupled with the prohibition against modifying them—that represents the specific federal requirement "applicable

under [the MDA] to the device. 21 C.F.R. § 814.39.[6]

Advanced Bionics' admits, for purposes of its preemption motion only, that it did not submit a PMA Supplement for the HiRes90K with the AstroSeal feedthru. Plaintiffs have offered proof that the feedthru assembly is a critical component, and thus, the change to the AstroSeal feedthru was a change that affected the safety and effectiveness of the HiRes90K. Accordingly, Plaintiffs' claim that Advanced Bionics deviated from its PMAS 30 requirements when it modified the HiRes90K and changed to the AstroSeal feedthru is a parallel claim that survives preemption.

### 4. Failure to Perform Qualification Testing Under Actual or Simulated Use Conditions on HiRes90K Devices with AstroSeal Feedthrus

■ To the extent that Plaintiffs' claims are premised on the allegation that Advanced Bionics did not test finished HiRes90K devices with AstroSeal feedthrus under actual or simulated use conditions in a violation of 21 C.F.R. § 820.30(g), the claims are not preempted.

Section 820.30(g) is a CGMP regulation that is part of the umbrella Quality System Regulations applicable to all medical devices under 21 C.F.R. Part 820. Pursuant to 21 C.F.R. § 820.30(g), a manufacturer is required to validate the device design, which "shall include testing of production units under actual or simulated use conditions." In *Howard*, the Sixth Circuit made it clear that CGMP regulations may im-

2010) (holding that, because the plaintiff's manufacturing defect claims were preempted, the derivative assertion that the device was adulterated is also preempted).

**5.** *In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.,* 623 F.3d 1200, 1205 (8th Cir.2010) (finding that failure to timely file adverse event reports as required by FDA

regulations were claims foreclosed by § 337(a) as construed in *Buckman,* 531 U.S. at 349, 121 S.Ct. 1012, because such claims are "simply an attempt by private parties to enforce the MDA").

**6.** *Kemp,* 231 F.3d at 228.

pose requirements on a manufacturer with regard to a Class III device that are in addition to the requirements outlined in the PMA.[7] In this respect, a manufacturer could be "liable even in circumstances where it complied fully with the specific [processes and specifications] approved by the FDA."[8]

Thus, Advanced Bionics' argument that this claim is expressly preempted because it performed all the testing outlined in PMA Supplement 30 for the HiRes90K is unavailing. Section 820.30(g) provides that a device must be tested in an environment that simulates the end use environment. This testing requirement is imposed on all manufacturers of Class III devices. Thus, it does not impose requirements that are "different from" or "in addition to" those prescribed by the FDA.

### 5. Other Alleged CGMP Regulatory Violations

Plaintiffs also premise their claims on alleged violations of several other CGMP regulations: 21 C.F.R. §§ 820.20, 820.80, 820.100, and 820.198. These CGMP regulations are too generic to provide a requirement that could support a parallel claim.

In holding that the particular CGMP regulation at issue could support a negligence per se claim, the *Howard* court was careful to distinguish *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*[9] In *Sprint Fidelis*, the district court stated that CGMP regulations are "simply too

generic, standing alone, to serve as the basis for Plaintiffs' manufacturing-defect claim."[10] The *Howard* court explained that "the alleged violations in *Sprint Fidelis* were different from the ones here; and moreover the plaintiff there did not even identify a specific GMP that he thought had been violated. Howard, in contrast, has done that; and, ... the particular GMP that he cites is not so vague as to be incapable of enforcement."[11]

This Court reads *Howard* as distinguishing between CGMP regulations that are "so vague as to be incapable of enforcement," and those that impose a concrete requirement on a manufacturer that embodies a standard of care related to the safety and effectiveness of the device. In this regard, the question of whether a CGMP regulation may support a parallel claim is similar to the question of whether the violation of a statute can support a negligence per se claim. If the CGMP regulation in question sets forth a specific and substantive standard of care that is intended to protect others, then it imposes a requirement on the manufacturer. As a result, the violation of that CGMP regulation may support a parallel claim and, incidentally, a negligence per se claim.[12]

On the other hand, CGMP regulations that amount to nothing more than administrative requirements or generalized objectives impose no duty on the manufacturer and, thus, may not support a parallel claim.[13]

---

7. *Howard,* 382 Fed.Appx. at 441.

8. *Id.* at 441.

9. 592 F.Supp.2d 1147 (D.Minn.2009)

10. *Id.* at 1157.

11. *Howard,* 382 Fed.Appx. at 440.

12. *Cf. Howard,* 382 Fed.Appx. at 440 (holding that allegation that the manufacturer failed to

ensure that it had removed manufacturing material in compliance with 21 C.F.R. § 820.70(h) supported a claim of negligence per se).

13. *King v. Danek Medical, Inc.,* 37 S.W.3d 429, 454–60 (Tenn.Ct.App.2000) (finding that FDA regulatory violations—for failure to obtain prior approval of a medical device—will not support negligence per se claim).

The CGMP regulations cited by Plaintiffs govern a manufacturer's general practices; in this regard, they are vague and open-ended, imposing administrative standards and/or generalized (and flexible) guidelines. They cannot support a negligence per se claim and, likewise, a parallel claim. This is not to say that Plaintiffs are precluded from introducing evidence with regard to Advanced Bionics' general manufacturing procedures and practices. Such evidence may be used, for example, to demonstrate Advanced Bionics' negligence. But standing alone, these CGMP regulations may not serve as the basis for Plaintiffs' claims.