**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0257n.06

**No. 11-4184**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRUCE BANDY; BARBARA ANTHONY; LISA ASHBY; JERALD BAKER; ROBERT BAKER; RUTHELLA BARR; ANTHONY BLOGNA; RITA BRODNIK; STANLEY BRODNIK; LORETTA BUNSEY; KATHRYN CERBIN; ANTHONY CHAMPA; ROBERT COUFALIK; CHARLES CROUT; BERTHA MYNARSKY; JOHN DAUER; JOHN DIPRE; JOHN DRAGAN; MARCIA EHRESMANN; KENNETH ENGLERT; EDWARD ESCHMAN; ELAIN FATICA; KEVIN FITZPATRICK; RICHARD FLOYD; LEONA FRANKS; DAVID GRUEL; JAMES HENLEY; ROBERT L. HESTON; AUBREY HOWARD; ROBERT JOYCE; IRA KATZ; THOMAS KRENA; NANCY LEONHARD; GAIL LYTHOS; EDWARD MICKEY; VICTOR MILLER; GERTHA MOORE; MARILYN MYERS; ROBERT NEUBERT; CLARENCE OHL; FRANCIS PATE; ROBERT PROSEN; KATHRYN RINELLA; CLARENCE ROGERS; HORST SCHULTZ; MARY STENNER; DANIEL VALVODA; JOHN VARGO; GRAZINA VARNELIS; LEO VERKAMP; CAROLYN WASOLOSKI; DALE DUERR; FLORA FYE; JAMES STOOPS; ALLAN BOYLE; DELLA BOYLE; NADINE BREISCH; GIZELLA POULOS; PATRICK SMITH; CHARLIE VERKAMP; DIANE VERKAMP; RAYMOND VERKAMP; CAROLYN WEIGAND; MICHAEL R. WEIGAND; HAROLD WEST; WESLEY WILCOX; MARY JANE WILCOX, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| FIFTH THIRD BANK; PARK NATIONAL BANK; U.S. BANK, as the corporate successor, other, Star Bank, N.A. other, Firstar Bank, N.A. | ) ) ) ) ) | |
| Defendants-Appellees. | ) ) | |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

**FILED**
*Mar 13, 2013*
DEBORAH S. HUNT, Clerk

No. 11-4184
*Bandy, et al. v. Fifth Third Bank, et al.*

Before: MARTIN, NORRIS, and SILER, Circuit Judges.

**SILER**, Circuit Judge. The plaintiffs, victims of a Ponzi scheme, appeal from the district court's judgment for the defendants, a group of financial institutions that held and disbursed funds associated with the scheme. This appeal emerges from the fourth lawsuit brought by a group of victims, and this particular group draws its identity, as distinct from other groups of victims, from the characteristic that none of the group allegedly issued the checks in question. Appeals from the first three lawsuits were heard and decided together in *Metz v. Unizan Bank*, 649 F.3d 492 (6th Cir. 2011), before the instant case had received a final appealable order. For the reasons detailed below, we **AFFIRM** the judgment of the district court.

**I.**

The plaintiffs alleged, in relevant part, various acts of fraud, fraudulent concealment, and conspiracy to commit fraud and various related breaches of Ohio's statutory enactment of the Uniform Commercial Code ("U.C.C."), but the operative complaint did not overtly state U.C.C. conversion claims. The plaintiffs appeal three separate orders by the district court: two granting the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and one denying the plaintiffs' motion for reconsideration of the first dismissal and for leave to file a third amended complaint.

**A. Dismissals of the Plaintiffs' Claims**

We review a district court's Rule 12(b)(6) dismissal of claims *de novo*. *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009). We apply Ohio law in accordance with the controlling decisions of its highest court.

No. 11-4184
*Bandy, et al. v. Fifth Third Bank, et al.*

*Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 517 (6th Cir. 2001). In the absence of such decisions, we must "ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with the issue." *Id.*

The plaintiffs focus their appeal on the argument that their second amended complaint, the operative complaint in the case, presented sufficient facts and allegations to have stated U.C.C. conversion claims. Additionally, the plaintiffs assert that the statute of limitations for such U.C.C. conversion claims may be tolled according to Ohio Revised Code § 2305.09, a statutory discovery rule. These arguments fail.

Acknowledging that their second amended complaint contains no overt U.C.C. conversion claims, the plaintiffs nonetheless contend that such claims should have been construed by the court and opposing parties based on the facts and allegations pled.[1] Apparently relying on *Conley v. Gibson,* 355 U.S. 41 (1957), the plaintiffs represent that the failure to designate any U.C.C. conversion claims should be understood as a mere "misstep" and promptly forgiven. However, the plaintiffs appear to miss that the *Conley* holding upon which they rely has been abrogated. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007). Indeed, under contemporary federal pleading standards, a complaint must contain "a short and plain statement of the claim showing that the

---

[1] As an alternative argument, Fifth Third Bank, one of the defendants, insists that the plaintiffs have expressly denied that their pleadings contain a conversion claim and have thus conceded the issue of conversion in its entirety. This is only partly true. The full quotation (partially omitted by Fifth Third Bank) reads as follows: "This is not a conversion claim, but it qualifies as 'wrongful taking of property' in accordance with R.C. 2305.09." As we stated in *Metz*, "[c]onversion and the wrongful taking of personal property are interchangeable terms." *Metz*, 649 F.3d at 497 n.1.

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

The plaintiffs' argument would require us to assemble parts of the operative complaint, drafted by an attorney, to construct the U.C.C. claims. The plaintiffs rely on *Minger v. Green*, 239 F.3d 793 (6th Cir. 2001), and urge us to remember that "the Rules require that we do not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint." *Id.* at 799. While the *Minger* court addressed claims by a pro se plaintiff, whose claims received a more liberal construction, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the principle that a court should look beyond labels and conclusions certainly applies more generally, *see Twombly*, 550 U.S. at 555 (describing a plaintiff's obligation as providing "more than labels and conclusions"). Nonetheless, the principle offers little help for the plaintiffs, where looking beyond labels and conclusions brings no U.C.C. conversion claims into view.

The plaintiffs would have us cobble together several disparate lines from their second amended complaint that they claim demonstrate that the plaintiffs were not the issuers of the checks. Most of the plaintiffs' references sound only generally, but they do specifically direct us to paragraph 38 of their second amended complaint, which alleges that the perpetrator of the Ponzi scheme executed a number of checks "for the benefit of each one of these Plaintiffs . . . and transferred that check either to the broker or to one of Carpenter's *alter ego* corporations." The plaintiffs reason that, under the standard for evaluating Rule 12(b)(6) motions to dismiss that takes all factual allegations as true, this quoted text establishes that the named plaintiffs were not issuers of the checks. They

reason somewhat amazingly that, since non-issuers of checks are not barred by Ohio Revised Code § 1303.60 from bringing a conversion claim, they obviously must have been bringing a conversion claim. Of course, as a factual matter, this argument ignores that the plaintiffs allege at another point in their second amended complaint that all of the plaintiffs *were* the issuers of the checks (though now on appeal they claim this statement was only "poorly drafted hyperbole"). Moreover, we reject the plaintiffs' ill-conceived argument that we must declare the existence of a claim simply because the plaintiffs may belong to a class that is not barred from bringing such a claim.

Even if the operative complaint sufficiently demonstrates that the plaintiffs were not barred from bringing a claim, it does not follow that they *did* bring the claim. The plaintiffs have included neither a "short and plain statement of the claim" nor sufficient facts to create even a "suspicion" of a cause of action. *See Twombly*, 550 U.S. at 555. The second amended complaint, if intended to advance U.C.C. conversion claims, reflects far more than a simple "misstep." While courts may grant relief to plaintiffs who plead adequate facts but fail to attach a perfunctory legal label, we do not require a district court to construct a golem cause of action from the spare parts it finds. The district court properly granted the defendants' motions to dismiss.

Even if we somehow construed U.C.C. conversion causes of action from the plaintiffs' second amended complaint, such claims would still be dismissed based on the statute of limitations. The plaintiffs severely misconstrue our holding in *Metz*–that Ohio Revised Code § 1303.60 bars issuers and acceptors of instruments from bringing U.C.C. conversion claims–as binding authority that non-issuers and non-acceptors of instruments may bring a claim for U.C.C. conversion and apply the discovery rule to toll the statute of limitations. If the plaintiffs are indeed not "issuers or

acceptors" of the checks, they are not statutorily barred from bringing suit in the first place, but that does not mean they benefit from discovery rule tolling. Taking the plaintiffs' reasoning to its ultimate end, there would be two separate causes of action for U.C.C. conversion in Ohio: one that applies to "issuers and acceptors" of an instrument but has no discovery rule, and one that applies to non-issuers and non-acceptors and has a discovery rule. That result cannot be right because the first cause of action would be statutorily barred by section 1303.60 and the second would contravene Ohio precedent, which finds the discovery rule not applicable to any U.C.C. conversion claims. *See Mattlin Holding, L.L.C. v. First City Bank*, 937 N.E.2d 1087, 1088-89 (Ohio Ct. App. 2010) (holding that a plaintiff, who happened to be the issuer of the checks in question, could not use a discovery rule to toll the statute of limitations for a U.C.C. conversion claim).

### B. Denial of the Plaintiffs' Motion to Reconsider[2]

We review the district court's denial of a motion to reconsider for abuse of discretion where reconsideration involves no summary judgment disposition. *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 637 (6th Cir. 2004). When reconsideration involves a summary judgment disposition, the issues are reviewed *de novo*. *Id.*

As in the trial court, the plaintiffs' argument here simply repackages their arguments relative to the first motion to dismiss. In effect, the plaintiffs attempt a "double" appeal: first, that the court

---

[2] The plaintiffs' notice of appeal also lists the denial of a motion for leave to file a third amended complaint as part of the appeal. They failed, however, to brief this argument. As we have consistently held, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quotation marks and internal citation omitted).

No. 11-4184
*Bandy, et al. v. Fifth Third Bank, et al.*

should not have dismissed the defendants and, second, that the court should not have denied their

motion to reconsider dismissing the defendants. We find no error.

**AFFIRMED.**